IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KATHY J. BATES, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 08-399-KI |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

MERRILL SCHNEIDER
P.O. Box 16310
Portland, OR 97292-0310

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

RICHARD A. MORRIS
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, District Judge:

Plaintiff Kathy Bates ("Bates") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383©). The Commissioner's final decision is affirmed.

## **BACKGROUND**

Born in 1959 (Tr. 75), Bates has an eighth-grade education and additional training as a phlebotomist, certified medical assistant, and certified nurse's aid. Tr. 99.[1] Bates reports past work as a certified nurse's aid and certified medical assistant between 1984 and January 2004. Tr. 92. Bates applied for DIB on May 12, 2004. Tr. 77. The Commissioner denied this application initially and upon reconsideration. Tr. 32-38.

An Administrative Law Judge ("ALJ") held hearings on January 31, 2007, and June 11, 2007. Tr. 552-601. On August 22, 2007, the ALJ issued an unfavorable decision. Tr. 19-30. The Appeals Council accepted additional evidence into the record but denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 7-11. Bates presently appeals.

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on August 25, 2008 (Docket # 10).

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1566.

## **THE ALJ'S FINDINGS**

The ALJ found Bates's chronic right shoulder pain, mild cervical stenosis, diabetes, non-alcoholic steatohepatitis, and obesity "severe" at step two in the sequential proceedings. Tr. 21. The ALJ found that these impairments did not meet or equal a listing at step three. Tr. 22. The ALJ found that Bates's "allegations as to the existence of her symptoms are only partially supported by the record." Tr. 27. The ALJ subsequently assessed Bates's RFC:

> [T]he claimant has the residual functional capacity to occasionally lift and carry thirty pounds. Furthermore, she should never engage in repetitive pushing, pulling or reaching away from her body with her right upper extremity. Finally, the claimant has no other functional or environmental limitations.

Tr. 23. The ALJ found that Bates could not perform her past relevant work (Tr. 28), but concluded that this RFC allowed Bates to perform work in the national economy. Tr. 29-30. The ALJ therefore

found Bates not disabled. Tr. 31.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## ANALYSIS

Bates challenges the ALJ's review of her testimony and the medical record. Bates also asserts that the ALJ's omission of lay witness testimony constitutes reversible error, and challenges the ALJ's findings at step five in the sequential proceedings.

**I.     Bates's Credibility**

Bates asserts that the ALJ erroneously found her not credible. The ALJ found that Bates's subjective complaints were not "sufficiently credible to serve as additive evidence to support a finding of disability." Tr. 26. The ALJ based this finding upon Bates's activities of daily living and the medical record. *Id.*

  **A.** **Legal Standard: Credibility**

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged" the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

  **B.** **Analysis**

    **a.** **Activities of Daily Living**

The ALJ cited Bates's activities of daily living, specifically noting that Bates cares for herself, cooks, shops, drives, maintains a planning calendar, pays bills, walks, and watches television. Tr. 26. The ALJ also noted that Bates performs household chores with assistance. *Id.* The ALJ concluded that these activities suggest that Bates's ability to perform daily activities is "at

least at times, been somewhat greater than [Bates] has generally reported." *Id.*

Bates now contends that the ALJ's references are not analogous to work activity. Pl.'s Opening Br., 16. The ALJ may cite daily activity in considering "whether a claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1040 (citing *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.3d 341, 346 (9th Cir. 1991) (en banc); *Fair v. Bowen*, 885 F.2d 597, 602-03 (9th Cir. 1989)). This is not a finding that the claimant's activities are equivalent to work activity; it is a finding that the claimant's activities do not support the alleged level of disability. *Id.* The ALJ's citation to Bates's reported activities was appropriate under this standard and is therefore affirmed.

      **b.**      **Work Activity**

The ALJ also cited Bates's work activity. Tr. 26. Bates contends that the ALJ incorrectly cited the record and that her participation in vocational rehabilitation contradicts, rather than supports, the ALJ's findings. Pl.'s Opening Br. 15-16.

The ALJ first found that Bates performed work activity while she had both her shoulder impairment and diabetes. Tr. 26. The record shows that Bates worked until January 2004. Tr. 81, 84, 92. Bates's reported that her shoulder impairment and diabetes began December 17, 2001. Tr. 92. The ALJ's finding is therefore based upon the record.

The ALJ also noted Bates returned to school and participated in vocational rehabilitation after her alleged disability onset date, and that Bates "performed quite well" in school. Tr. 26 (citing Ex. 31F: 294, 295). The record shows that Bates reported "doing well" in school, and thus supports the ALJ's finding. Tr. 475-76.

Bates now submits that the ALJ failed to discuss records showing that she "struggled" during her vocational rehabilitation internship, notably because she had a diabetic foot infection, had difficulty wearing closed-toed shoes, injured her Achilles tendon, felt overwhelmed by her classes, and complained of right-hand numbness during this period. Pl.'s Opening Br. 15.

The record shows that Bates reported these incidents during her externship period. Tr. 152, 154, 157, 168, 507, 514. However, the record also shows that Bates satisfactorily completed her externship. Tr. 152. This court must affirm the ALJ's finding when two rational interpretations of the record arise, and the ALJ's findings are based upon "inferences reasonably drawn." *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Here, the record shows that Bates complained of impairment symptoms during her externship, but also shows that Bates completed her externship and concurrently performed well in school. Therefore, the ALJ's finding regarding Bates's school performance and externship completion is affirmed.

### c.    Medical Record

The ALJ's credibility finding also cited Bates's medical record, finding her symptom testimony unsupported by the medical record and other corroborating evidence. Tr. 26.

The ALJ may not require medical evidence to corroborate the degree of symptom testimony the claimant proffers. *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen*, 80 F.3d at 1282)). However, the ALJ may consider a claimant's medical record in conjunction with other credibility factors. *Smolen*, 80 F.3d at 1284. Here the ALJ may rely upon a physician observations, *id.*, and physician treatment plans, including prescribed medications. *Id.* at 1284 n.8 (citing SSR 88-13). The ALJ presently noted that the medical record showed no migraine headache diagnosis, and noted treatment

notes suggesting that Bates was noncompliant with her prescribed medical regime. Tr. 22. The ALJ also referred to treating physician Dr. Switlyk's clinical observations. Tr. 27. These references to portions of the medical record, in conjunction with other credibility factors, are appropriate. This analysis is affirmed.

In summary, the ALJ's credibility findings are based upon the record and the appropriate legal standards. These findings are affirmed.

## II.   Medical Source Statements

Bates challenges the ALJ's assessment of examining physician Dr. Ellison and treating physician McNichol.

### A.   Standards

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.*, at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. Disability opinions are furthermore reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1).

### B.   Examining Physician Dr. Ellison

The ALJ discussed Dr. Ellison's March 10, 2007, orthopedic evaluation. Tr. 27. The ALJ found that the record did not support Dr. Ellison's limitations and assigned Dr. Ellison's opinion less weight than that of treating physician Dr. Switlyk. *Id.*

///

### a. Dr. Ellison's Opinion

Dr. Ellison assessed Bates with chronic neck pain, with degenerative arthritis and disc disease, chronic migraine headaches, insulin-requiring diabetes with mild peripheral neuropathy, hepatic cirrhosis, obesity, chronic depression with suicidal ideation, hypertension, a small ventral hernia, mild bilateral carpal tunnel syndrome, and gastro-intestinal reflux disease ("GERD"). Tr. 532. Dr. Ellison stated that Bates could occasionally lift and carry up to ten pounds, and never lift or carry greater weights. Tr. 535. Dr. Ellison did not answer any questions regarding Bates's ability to sit, stand, or walk. Tr. 536. Dr. Ellison stated that Bates should never reach overhead with her right hand, may occasionally finger and feel objects with her right hand, and occasionally push and pull with her right hand. Tr. 537. Dr. Ellison also stated that Bates may frequently perform each of these activities with her left hand. *Id.*

Dr. Ellison restricted Bates to occasional operation of foot controls with her right foot, and frequent operation of foot controls with her left foot. *Id.* Additionally, Dr. Ellison restricted Bates to occasionally climbing ramps and stairs, balancing, and stooping. Tr. 538. Dr. Ellison stated that Bates should never climb ladders or scaffolds, kneel, crouch, or crawl. *Id.* Finally, Dr. Ellison indicated that Bates should never be exposed to unprotected heights, and only occasionally be exposed to moving mechanical parts, operation of a motor vehicle, extreme cold, extreme heat, and vibrations. Tr. 539. Dr. Ellison indicated that Bates could frequently be exposed to humidity, wetness, dust, odors, fumes, and pulmonary irritants. *Id.*

### b. Analysis

Bates now asserts that the ALJ erroneously gave greater weight to treating physician Dr.

Switlyk's opinion than that of examining physician Dr. Ellison. Pl.'s Opening Br., 10. Bates specifically contends that the ALJ here relied upon Dr. Switlyk's November 2003 evaluation, and that Dr. Switlyk's restrictions are consistent with Dr. Ellison's restrictions.

The ALJ generally must give greater weight to a treating physician's opinion. *Lester*, 81 F.3d at 830. This is because a treating physician's relationship with the patient ordinarily affords a greater opportunity to know and observe the patient. 20 C.F.R. § 404.1527(d)(2); *Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). Furthermore, the longer the treating relationship, the more weight accorded to the treating source. 20 C.F.R. § 404.1527(d)(2)(i). Additionally, the ALJ need only give "specific and legitimate" reasons for rejecting a contradicted opinion. *Id.* Therefore, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Ellison's opinion in favor of Dr. Switlyk's opinion.

The ALJ found treating physician Dr. Switlyk's opinion more consistent with the record as a whole. Tr. 27. The ALJ also found Dr. Switlyk's opinion properly supported by clinical notes and findings. *Id.* The ALJ noted that Dr. Ellison's opinion contradicted and exceeded limitations assessed by other physicians, including Dr. Switlyk. *Id.*

The record supports these findings. Dr. Switlyk suggested that Bates could perform light to medium lifting, and lift no more than thirty pounds from waist level. Tr. 216. Dr. Switlyk also restricted Bates from any repetitive reaching, pushing, or pulling "with her arm away from her body." *Id.* Additionally, the record does not show that any other physician assigned limitations as extensive as those assigned by Dr. Ellison. These reasons together constitute "specific and legitimate" reasons for according less weight to limitations assessed by Dr. Ellison. The ALJ's finding is therefore

affirmed.

### C. Treating Physician Dr. McNichol

The ALJ discussed treating physician Dr. McNichol's suggested workplace limitations, and found these limitations unsupported by Dr. McNichol's treatment notes. Tr. 27-28. The ALJ also noted Dr. McNichol's explanation that Bates's limitations were due in part to "marked deconditioning," and stated that this did not constitute a disabling impairment under the Commissioner's regulations. Tr. 28.

Bates now challenges the ALJ's assessment of Dr. McNichol's workplace limitations and asserts that, contrary to the ALJ's findings, Dr. McNichol supported these limitations. Pl.'s Opening Br., 12. Here Bates cites Dr. McNichol's previous diagnoses of an unspecified "median nerve compression," depression, chronic back pain, migraine headaches, and fatigue. *Id.* at 12-13. Bates also contends that Dr. McNichol properly found that she meets Listing 1.02. *Id.* at 12.

#### a. Dr. McNichol's Treatment Notes

Dr. McNichol treated Bates between December 2002 and October 2006. Tr. 248-53, 397-98, 506, 509, 511, 514, 517, 519-20, 522-24. Between December 2002 and June 2005 Dr. McNichol followed Bates's gallbladder disease and subsequent cholecystectomy, and assessed diabetes, depression, cirrhosis, migraine headaches, and left shoulder tendinitis. Tr. 248-53, 511-12, 520, 522-24. In May 2005 Dr. McNichol wrote that Bates had an unspecified "median nerve compression," and fitted a splint. Tr. 398, 514. In October 2006 Dr. McNichol stated that Bates has "continued chronic right shoulder pain with radiation to neck and upper arm," (Tr. 397), and recommended "disability." Tr. 397.

On February 5, 2007, Dr. McNichol complete a questionnaire regarding Bates's workplace limitations. Tr. 486-89. Dr. McNichol wrote that Bates "really needs assistance with [activities of daily living], shopping, cooking, dressing, transportation." Tr. 487. Dr. McNichol suggested that Bates cannot lift or carry any weight, can stand or walk up to ten minutes at one time (Tr. 487), can stand less than one hour in the course of an eight-hour day, can sit up to ten minutes, and sit less than one hour in the course of an eight-hour day. Tr. 488. Dr. McNichol endorsed limitations stating that Bates may never climb, balance, stoop, kneel, crouch, crawl, or reach. *Id.* Dr. McNichol additionally restricted Bates from handling, fingering, or feeling objects, and must avoid all exposures to extreme heat, extreme cold, wetness, humidity, noise, vibration, fumes, and hazards. *Id.* Finally, Dr. McNichol stated that Bates would miss two or more days a month from a sedentary job, and opined that Bates has "marked" limitations in concentration, persistence, and pace.

The ALJ's finding that Dr. McNichol's notes did not support these limitations is based upon the record. In the course of treating Bates, Dr. McNichol made no reference to the limitations she endorsed on February 5, 2007. The court furthermore notes that assessments of disability are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). The ALJ's findings regarding Dr. McNichol's February 5, 2007, work restrictions are therefore affirmed.

### b.     Listing 1.02

Dr. McNichol also stated that Bates meets an impairment listed in the Commissioner's regulations, Listing 1.02. Tr. 487.

Listing 1.02 addresses "major dysfunction of joint(s) due to any cause." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. To meet the listing with an upper extremity joint impairment, a claimant

demonstrate "Involvement of one major peripheral joint *in each upper extremity* (i.e. shoulder, elbow, or wrist-hand) resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02B (emphasis added). Inability to perform fine and gross movements effectively "means an extreme loss of function of *both upper extremities*; i.e. an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §1.00B2c (emphasis added).

Dr. McNichol stated that Bates met the listing due to her right shoulder pain. Tr. 486. An individual must demonstrate the requisite level of impairment in both upper extremities to meet Listing 1.02. For this reason Dr. McNichol's opinion does not establish that Bates meets the Listing because the opinion does not reference both upper extremities. This submission therefore fails.

In summary, Bates identifies no reversible error in the ALJ's assessment of the medical evidence. The ALJ's findings are based upon the record and the appropriate legal standards and are therefore affirmed.

## III. Lay Witness Testimony

Bates asserts that the ALJ rejected lay witness Danielle Thompson's testimony regarding Bates's limitations. Pl.'s Opening Br. 13.

### A.    Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding

the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, and he must give germane reasons for rejecting lay testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Silent omission of lay testimony is not harmless, unless the reviewing court can confidently conclude that "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006).

**B.     Analysis**

Thompson completed a third party report on June 14, 2004. Tr. 134-42. Thompson wrote that Bates "gets up, cooks breakfast, showers," and can no longer bowl, perform yardwork, or be as active as she was in the past. Tr. 134-45. Thompson wrote that Bates prepares meals daily, and performs household chores such as laundry, cooking, and dusting, although she finds these activities "occasionally difficult [due to] repetitive motion." Tr. 136. Thompson stated that Bates is unable to "get down and scrub the tub or floors" due to her shoulder impairment, and that Bates cannot do any repetitive motions. *Id.* She also reported that Bates drives, shops, and pays her own bills. Additionally, Bates reads, visits with friends, watches movies, but, again, cannot go bowling. Tr. 138-39. Thompson reported that Bates has no difficulties paying attention, but has to rest while performing chores. Tr. 139. Finally, Thompson wrote that Bates has migraines headaches, diabetes, and back pain, which cause poor sleep and weakness. 141.

Bates does not presently explain to the court how Thompson's described limitations exceed the limitations the ALJ prescribed in Bates's RFC assessment. The ALJ restricted Bates from lifting and carrying more than thirty pounds, and from all repetitive pushing, pulling, or reaching with her

right arm. Tr. 23. Fully crediting Thompson's testimony, described above, does not compel further restrictions. The ALJ's omission of Thompson's is therefore inconsequential.

### IV. The ALJ's Step Five Findings

Bates challenges the ALJ's findings at step five of the sequential proceedings. Bates specifically alleges that the ALJ failed to include all of her limitations in his questions to the vocational expert, and that she is further unable to perform the jobs identified by the vocational expert.

The ALJ's questions to the vocational expert must include limitations that are properly supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Bates fails to show that the ALJ omitted limitations from her RFC. The ALJ therefore submitted a proper hypothetical question to the vocational expert. In response, the vocational expert stated that an individual with Bates's RFC assessment could perform work in the national economy as a food assembler or storage facility clerk. Tr. 597.

Bates contends that she cannot perform this work because the *Dictionary of Occupational Titles* ("*DOT*") suggests that both positions may require "reaching." Pl.'s Opening Br. 18. *DOT* presumptions regarding job classifications are rebuttable. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ may instead rely upon the services of a vocational expert and her interpretation of characteristics of specific jobs available in the local area. *Id.* Here the vocational expert clearly stated that Bates could perform the indicated jobs, taking into account "no use of the arm away from the body." Tr. 597. The ALJ thus properly relied upon the vocational expert's testimony. The ALJ's findings incorporating that testimony are therefore affirmed.

**CONCLUSION**

The Commissioner's decision that Bates did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED and the case is dismissed. IT IS SO ORDERED.

Dated this ____24th____ day of April, 2009.

      /s/ Garr M. King
      Garr M. King
      United States District Judge

17 - OPINION AND ORDER